UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ANNE K. MASOTTI

                Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY

                Defendant.
----------------------------------------------------------x

**MEMORANDUM and ORDER**

14-CV-5081 (SLT)

**TOWNES, United States District Judge:**

*Pro Se* plaintiff Anne K. Masotti ("Plaintiff") seeks review of the Commissioner of Social Security's (the "Commissioner") final decision denying her request for waiver of recovery of overpayment of disability benefits under the Social Security Act (the "SSA"). On April 25, 2016, the Commissioner filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), contending that Plaintiff was not "without fault" in receiving overpayments. (ECF No. 13).[1] For the reasons set forth below, it is **ORDERED** that the Commissioner's motion is **DENIED** and the case is **REMANDED** for further proceedings consistent with this opinion.

## I. BACKGROUND

On or about June 4, 2007, Plaintiff, a former waitress and United States Postal Worker, applied for disability benefits for numerous ailments, including degenerative disc disease, osteoarthritis of both the hip and knee, impingement syndrome, and obesity. (Administrative Record ("A.R.") at 41-43, 49, 197-98; 203-05). Her initial "SG-SSA-16" form—a computer-generated form that does not bear her handwriting or signature—included the following statement: "I have not filed nor do I intend to file for any workers' compensation, public disability or black lung benefits." (A.R. at 198).

---

[1] The Commissioner also filed a notice to pro se plaintiff pursuant to Local Rules 12.1 and 56.2 and a Statement of Compliance with Local Rule 7.2. (ECF Nos. 13, 14, 14.1, & 14.2). Despite these notices and ample opportunity, Plaintiff has not opposed the instant motion.

1

The Commissioner at first denied the application and Plaintiff, then represented by counsel, timely requested a hearing before an Administrative Law Judge ("ALJ"). (A.R. at 210-12). That hearing took place on December 10, 2008. (A.R. at 151-80). Plaintiff testified that two of her ailments resulted from two distinct workplace accidents during her employment at the United States Postal Service ("U.S.P.S."), which in turn resulted in two distinct workers' compensation claims. To wit, she stated that she had initially injured her neck in 2005 while working for the U.S.P.S. (A.R. 157-58, see also 162-63). She submitted a workers' compensation claim for that injury, which the U.S.P.S. initially disputed but later approved, resulting in a lump sum payment of past due workers' compensation benefits in early 2007. (A.R. at 160-63). Before resolution of that claim and receipt of the resulting payment, Plaintiff had returned to work for the U.S.P.S. on a "limited-duty basis" and injured her shoulder. (A.R. at 157, 163-64). She made a second worker's compensation claim based on this second injury, which was approved and resulted in payment of two-thirds of her salary at the U.S.P.S. (A.R. at 162-63). The record makes no mention of when she submitted the second workers' compensation claim, but Plaintiff testified that she first received benefits on that claim "after about –starting in July of '07." (A.R. at 162; see also ECF No. 14 ("Comm'r Br.") at 9 (stating that the Commissioner is "unaware of the exact date on which Plaintiff applied for Workers' Compensation benefits . . ."). In any event, during the hearing Plaintiff disclosed and answered questions at length regarding her application for and receipt of worker's compensation benefits based on both injuries. She specifically testified that as of the hearing date she was receiving worker's compensation benefits stemming from her second injury in an amount equal to two-thirds of her former salary. (A.R. at 163).

On January 29, 2009, the ALJ approved Plaintiff's application in a written opinion finding her disabled due to degenerative disc disease, osteoarthritis of both the hip and knee, impingement syndrome, and obesity. (A.R. at 41-49). The opinion assigned an onset date of January 27, 2007, and concluded by stating that the "workers' compensation offset provisions at

2

20 CFR 404.408 may be applicable." (A.R. at 49.) Both Plaintiff and her counsel, Gary Pernice at Binder & Binder, received this opinion in a "Notice of Decision – Fully Favorable." (A.R. at 36-38). Likewise, both Plaintiff and her counsel received a Notice of Award several weeks later on February 13, 2009, which explained that the award would include $20,903 in retroactive benefits for the period from July 2007 through January 2009 ($5,225.75 of which was withheld to pay her attorney at Binder & Binder)[2] and monthly payments of $1,164.10. (A.R. at 214-15). The Notice of Award also referenced an enclosed pamphlet that purportedly advised Plaintiff of her responsibilities to report workers' compensation benefits, (A.R. at 215; see also Comm'r. Br. at 2), but no such pamphlet appears in the record.

A little over a year later the Commissioner gave Plaintiff written notice that she had received overpayments totaling $35,492.40 as a result of her receiving both workers compensation benefits and disability payments for a net sum exceeding eighty percent of her former pre-disability income, which is prohibited by section 224 of the SSA and 20 C.F.R. 404.408. (A.R. 66). The notice requested repayment of that sum and also included detailed instructions for seeking a waiver of repayment obligations. Plaintiff promptly requested a waiver of recovery of the overpayment and did not dispute that she was overpaid or the amount the Commissioner sought. (A.R. 73-80). Her waiver request form stated:

> I was never notified by Social Security that I was never allowed to collect Social Security Disability and Workers' Compensation. (Please see attached statement)[3]

(A.R. at 74). The Commissioner preliminarily denied that request in a written notice dated June 11, 2010, and affirmed that denial several weeks later after a "personal conference" with Plaintiff. (A.R. at 83-85). Plaintiff then submitted a form request for reconsideration, asserting again that she was not aware she could not collect both social security and worker's compensation benefits and added that "my lawyer never alerted me." (A.R. at 85).

---

[2] See note 5, infra.
[3] The referenced "attached statement" does not appear to be in the record.

3

The Commissioner denied that request the following month, stating that it considered Plaintiff at fault because "in your initial disability application you stated that you do not now nor do you intend in the future to file for workers compensation. You did not at any time report to a social security office that you were receiving workers [sic] compensation." (A.R. at 92). Plaintiff then requested a hearing before an ALJ, which was held over a year and a half later after lengthy postponement caused by Hurricane Sandy.

The overpayment hearing took place on February 25, 2013. (A.R. at 183-96). Plaintiff provided the only testimony and was not represented by counsel. (A.R. at 11). The hearing lasted 23 minutes and during that time the ALJ asked questions about only (i) the amount and timing of the benefits that Plaintiff received and (ii) her various expenses. (A.R. at 183-96). Although the ALJ never questioned Plaintiff about her understanding of her obligations, Plaintiff frequently launched into testimony on the topic, always unprompted by the ALJ and never acknowledged by him. For example, at the outset of the hearing Plaintiff stated (i) that she was not aware that she was not permitted to receive both workers' compensation and disability benefits, and (ii) that her lawyer at Binder & Binder was aware that she was receiving worker's compensation benefits yet never informed her that this might cause her disability payments to be overpaid and thus obligate her to return large sums. (A.R. at 184). She repeated these points throughout the hearing, emphasizing that she had informed the ALJ presiding over her initial disability determination hearing and that she had no understanding of the potential obligation to repay her benefit payments. (A.R. at 184-89). She also testified that she was having "a very bad time emotionally" when applying for benefits in light of her "traumatic injury" and having recently discovered her father's dead body "in the bathroom [with] blood all over." (A.R. at 184-85). She stated that it was "very traumatic losing my dad like I did and at the time I was just very emotionally, mentally, distraught . . . it was just a horrible time." (A.R. at 188-89).

The ALJ issued his decision less than a month later, denying Plaintiff's request for a waiver. He concluded that recovery of Plaintiff's overpayment was not waived because Plaintiff

4

was not "without fault" as required by the Section 204(b) of the SSA and that Plaintiff was therefore liable for repayment of $35,860.30. (A.R. at 11-14). The reasoning for his conclusion is not entirely clear. In the "Applicable Law" section of his opinion he stated:

> Fault as used in *without fault* applies only to the individual. Although the Social Security Administration may have been at fault in making the overpayment, the fact does not relieve the claimant or any other individual from whom the Adminmistration seeks to recover the overpayment from liability for repayment, if the claimant is not without fault. In determining whether the individual is at fault, the undersigned will consider all pertinent circumstances including the claimant's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . she has. (20 CFR 404.507).

(A.R. at 12 (emphasis and CFR citation in the original).

In the portion of the "Findings of Fact and Conclusion of Law" section of his opinion that addressed whether Plaintiff was "at fault," the ALJ stated:

> **The claimant was at fault in causing the overpayment (20 CFR 404.506(a), 404.507, and 404.510a).**
>
> The claimant was at fault in accepting overpayment. She was simultaneously receiving workers [sic] compensation in the amount of $2,069.68 per month, as well as Social Security Disability benefits.
>
> In her request for waiver of the overpayment, the claimant stated that she was never notified by Social Security that she was never allowed to collect Social Security Disability and Workers' Compensation, and had never been notified of any overpayment. In her request for [r]econsideration, the claimant indicated that her lawyer never advised her of this prohibition. In the request for a hearing, the claimant stated that she had informed the [ALJ] about her compensation benefits, so the fact that she had been receiving an overpayment was not her fault.
>
> At the overpayment hearing, the claimant testified in a sincere manner. She reported that she has incurred an increase in rental expenses, to the point where her monthly rent approached $1,000 a month. She indicated that there have also been increases in her utilities and other necessities. She advised that she could barely meet her regular expenses with her total benefits of $2,069.00 in Workers [sic] Compensation benefits, and $46.00 in Social Security Benefits [properly offset by the former]. This totals to approximately [$]25[,]380.00 a year. Given this, she testified that she is not in a position to make any repayment.

5

> The undersigned finds that in view of the claimant's economic circumstances repayment of the overpayment would constitute a hardship. However, since the overpayment is from the Social Security Trust Fund, the undersigned is constrained to deny her plea for a waiver or a deduction of the overpayment amount. Therefore, based on the evidence presented, the application for waiver or reduction of the overpayment must be at this time denied.

(A.R. at 13).

After seeking and being denied review by the Appeals Council, (A.R. at 7-10), Plaintiff initiated this suit with a three-page *pro se* complaint form. (ECF No. 1). She does not appear to challenge that she was overpaid benefits. Instead, she challenges only the Commissioner's determination that she was "not without fault" in receiving the overpayments under 42 U.S.C. § 404(b).

### III. DISCUSSION

#### A. Applicable Law

Section 224 of the Social Security Act (the "SSA") limits the amount of disability benefits an individual can receive when she is simultaneously receiving workers' compensation benefits. 42 U.S.C. § 424a. Roughly summarized, that section provides that disability benefits "must be reduced" by the amount necessary to limit the sum to eighty percent of an individual's pre-disability earnings. *Id.*; *see also* 20 C.F.R. 404.408.

Section 204 of the SSA directs the Commissioner to recover funds from any individuals who were overpaid benefits under that act. 42 U.S.C. § 404. Specifically, section 204(a) provides that "[w]henever the Commissioner . . . finds that more or less than the correct amount of payment has been made to any person . . ., proper adjustment or recovery shall be made, under regulations prescribed by the Commissioner." Section 204(b) further provides that "[i]n any case [of overpayment], there shall be no adjustment of payments to, or recovery by the United States from, any person who is *without fault* if such adjustment or recovery would defeat

6

the purpose of this subchapter or would be against equity and good conscience." (Emphasis added). Thus, if a person is not "without fault" in receiving overpayments, recovery of the same cannot be waived. *Doherty v. Heckler*, 588 F. Supp. 115, 117 (E.D.N.Y. 1984).

In light of the statutory dictate that recovery of overpayments "shall be made, under regulations prescribed by the Commissioner," the issue of fault is largely governed by the Commissioner's own regulations. 20 C.F.R. § 404.507 provides that, except in the case of "deduction overpayments," which are governed by 20 C.F.R. §§ 404.510 and 511, a person is "at fault" if overpayment resulted from

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

*See also Cohen V. Bowen*, 837 F. 2d 582, 584 (2d Cir. 1988). 20 C.F.R. § 404.510 provides that a claimant will be found without fault in accepting a "deduction overpayment" in a non-exhaustive list of "situations," including when overpayment resulted from a claimant's:

> (n) Failure to understand the deduction provisions of the Act or the occurrence of unusual or unavoidable circumstances the nature of which clearly shows that the individual was unaware of a violation of such deduction provisions.

Both sections 404.507 and 404.510 provide that, when addressing fault, the Commissioner will "consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . the individual has." As many courts have recognized, consideration of such circumstances make a claimant's comprehension a necessary component in the determination of "fault." That is, although a claimant's "confusion" as to whether she is entitled to benefits does not automatically relieve her of fault for overpayments, *see, e.g., Howard v. Astrue*, No. 07-CV-1558, 2007 WL 4326788, *3

(E.D.N.Y. Dec. 7, 2007), a claimant's lack of comprehension must nevertheless be considered and in some instances will result in a determination that she was "without fault" in receiving overpayments, *see, e.g., Schwingel v. Harris*, 631 F.2d 192, 198 (2d Cir. 1980) ("[W]e do recognize the possibility that lack of . . . understanding may be a sufficient basis for a finding of lack of fault, taking into account, as the agency's regulations expressly require, the plaintiff's age, comprehension, memory, and physical and mental condition; to hold otherwise would render this requirement idle."); *see also Corr for Corr v. Sullivan*, 725 F. Supp. 413, 415 (N.D. Ind. 1989). ("For purposes of the Act's fault provisions . . . ignorance of the law is an excuse.")

As Judge Cogan elegantly distilled these principles, the fault issue essentially turns on whether a claimant was negligent in failing to report her financial circumstances.

> However, unlike most questions of negligence, the "fault" determination has both objective and subjective components. This is apparent from the fact that in determining whether the claimant is without fault, the Commissioner must consider "all pertinent circumstances, including the individual's age and intelligence, and education, and any physical, mental or linguistic limitations." 20 C.F.R. § 404.507. Lack of comprehension, therefore, must also be considered. *See Schwingel v. Harris*, 631 F.2d 192 (2d Cir.1980).

*Gadayeva v. Comm'r of Soc. Sec.*, No. 11-CV-2961 BMC, 2012 WL 6212701, at *2 (E.D.N.Y. Dec. 13, 2012).

B. Standard of Review

In reviewing the ALJ's determination that a claimant is not without fault, the Court applies the "substantial evidence" test, under which the Court must treat as conclusive any finding of fact made by the ALJ that is supported by substantial evidence. *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir.1998). The Supreme Court has defined "substantial evidence" in Social Security cases as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, "[w]here an administrative

decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir.1998). Nevertheless, in reviewing the ALJ's decision, the Court must also determine whether he applied the proper legal standards, followed the appropriate procedure, and made findings sufficient to allow for meaningful judicial review. *See Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1042-43 (2d Cir. 1984) ("The court's responsibility, however, was not . . . to make its own findings of fact but to remand the matter to the Secretary for further findings.")

### C. Analysis

Here the ALJ failed to apply or even discuss the appropriate legal standards, follow SSA procedures, or make findings sufficient to allow a meaningful review of his decision. Most significantly, his opinion neither discussed nor applied the standards for determining fault set forth in 20 C.F.R. § 404.507 subsections (a)-(c), discussed infra, or §§ 404.510 and 404.511. In the portion labeled "Findings of Fact and Conclusions of Law," the ALJ's opinion simply recites that Plaintiff simultaneously received worker's compensation and social security benefits, recounted her testimony that she did not know this was prohibited, summarized her expenses, "found" that repayment would constitute a hardship, and concluded that he must deny her waiver request "since the overpayment is from the Social Security Trust Fund." (A.R. at 13). The ALJ thus ignored the relevant standards for determining fault, made no relevant findings of fact and made virtually no mention of evidence related to fault beyond Plaintiff's simultaneous receipt of both disability benefits and workers' compensation. As a result, the Court is left to guess as to (i) the evidence on which the ALJ based his decision, (ii) the facts that he found in light of that evidence, and (iii) the legal analysis concerning fault that is ostensibly under judicial review.

9

Further, the opinion gives no indication that the ALJ considered Plaintiff's subjective state as required by both sections 404.507 and 404.510. As Judge Cogan emphasized in *Gadayeva*, that much must be considered where it may affect a claimant's comprehension of her obligations. *See Gadayeva*, at *4 (remanding where ALJ failed to consider whether mood disorder and depression, which were not disabilities under the SSA, were "mitigating factors" sufficient to warrant a finding that claimant was "without fault.") While the ALJ here stated in the "Applicable Law" section of his opinion that he "w[ould] consider all pertinent circumstances including the claimant's age and intelligence, and any physical, mental, educational, or linguistic limitations," (A.R. at 12), he made no further mention of her mental state at the time of her application and there is no indication that he actually did consider it. To the contrary, the hearing transcript suggests that the ALJ did not, in fact, consider Plaintiff's mental state, considering that each time she raised the issue the ALJ disregarded the topic and asked unrelated questions. For example, when Plaintiff stated that:

> I didn't know that I was unable to collect both . . . at the time [of the initial application], judge, five years ago I lost my father tragically. I found him passed away in the bathroom and there was blood all over and I had a very bad time emotionally. So at the time it was when everything was happening and I didn't know that I couldn't collect both[,]

the ALJ's response was to ask: "[a]re you getting benefits from the Post office?" Likewise, when Plaintiff later asserted that she had been "mentally distraught," the ALJ responded by implicitly suggesting her mental state was irrelevant because "the funds that you're receiving from the Social Security are trust funds and trust funds cannot just be given out without a decent explanation." (A.R. at 189). At no time during the hearing did he return to the topic. (*see* A.R. at 183-96). In short, there is no indication that the ALJ actually contemplated Plaintiff's mental state, which, given her testimony, was unavoidably at issue when considering her fault. His passing recitation of the obligation to consider subjective criteria in the opinion's "Applicable Law" section is not enough in these circumstances. Rather, an ALJ must, at the very least

"indicate how, or whether, he applied them." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1043 (2d Cir. 1984).

In this scenario, the court unfortunately must remand for further proceedings. *See, e.g., Valente*, 733 F.2d at 1045 (ALJ must clearly state his rationale for the conclusions he draws so that, if appealed, his decision may be given appropriate judicial review.); *Harzewski v. Chater*, 977 F. Supp. 217, 223-24 (W.D.N.Y. 1997) (Absent explicit findings a "court cannot ascertain the underlying rationale for the determination of fault."); *Gadayeva*, supra.at *3-*4 (remanding because "insufficient findings" gave "no indication in the ALJ's decision whether and to what extent the prior proceedings and findings factored into her decision."); *Polanco v. Shalala*, No. 92 CIV. 3035 (SS), 1994 WL 30415, at *5 (S.D.N.Y. Feb. 2, 1994) (Sotomayor, J.) ("This case must be remanded because of the S.S.A.'s failure specifically to take into account the factors the law requires."); *Pass v. Shalala*, No. 92-C-2580-S, 1994 WL 486589, at *3 (N.D. Ala. May 26, 1994) (Remanding because "[n]ot once in his opinion did the ALJ consider the plaintiff's personal circumstances and situation" when determining fault."); *Albalos v. Sullivan*, 907 F.2d 871, 874 (9th Cir. 1990) ("ALJ's failure to make findings on factors to be considered in determining whether to waive deduction overpayment warranted reversal.") Without findings of fact, particularly regarding Plaintiff's mental state and comprehension of her obligations, the ALJ's opinion simply cannot be meaningfully assessed on judicial review. The need for such finding, moreover, is significantly increased where, as here, a claimant appears before an ALJ without counsel. In these circumstances the ALJ has a duty "to scrupulously and conscientiously probe into, inquire of and explore for all the relevant facts...." *Dorman v. Harris*, 633 F.2d 1035, 1040 (2d Cir. 1980) (citation omitted), and discharge a duty to adequately protect the rights of the pro se party before him. *See, e.g., Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980). In the absence of the requisite findings and development of the record, remand is therefore necessary.

11

The Commissioner's brief makes several arguments that the ALJ's opinion is supported by substantial evidence and must therefore be affirmed. Each argument makes reference to evidence and law not discussed in the ALJ's opinion and therefore fails to address the primary reason for remanding here. To be clear: the reasoning and evidence discussed in the Commissioner's brief must, in the first instance, appear in the ALJ's decision to allow for appropriate judicial review. Nevertheless, even had these arguments appeared in the ALJ's opinion, they suffer several shortcomings as explained below.

The Commissioner essentially argues that Plaintiff is "at fault" under each of the three prongs of 20 C.F.R. § 404.507.[4] The Commissioner first argues that Plaintiff is not "without fault" under 404.507(a) because "she made a statement on her application for disability benefits that she knew or should have known to be incorrect" that resulted in overpayment of her disability benefits. (Comm'r. Br. at 9). Specifically, the Commissioner contends that the statement on Plaintiff's SG-SSA-16 form that "I have not filed nor do I intend to file for any workers' compensation, public disability or black lung benefits" was untrue and resulted in overpayment. (*Id.* (citing A.R. at 198)). This argument falls short in several ways. First, the SG-SSA-16 form is a computer generated document that does not bear Plaintiff's signature, mark, or any other indication that the she reviewed the document. Such a statement cannot be the basis for an unfavorable decision where the ALJ did not discharge his duty to "scrupulously" and "conscientiously" probe the record on that point. *See Dorman*, 633 F.2d at 1040. As it stands, the Court has no information about Plaintiff's SG-SSA-16 form—whether she even knew of it remains undetermined. Moreover, even if we assume that Plaintiff had made the statement, there is no substantial evidence in the record that it was either untrue or resulted in overpayment. As Plaintiff testified before the ALJ, she had applied for and received workers' compensation on two separate occasions after two distinct injuries. The first application took

---

[4] On remand the ALJ should explicitly explain what the Commissioner's brief takes for granted—why 20 C.F.R. § 404.507 and not § 404.510 governs the fault determination.

place in 2005 and resulted in a lump sum payment for sums due to her in 2006. (A.R. 157-58, 162-63). The social security disability benefit payments at issue here, however, were for the period beginning in July 2007, and thus no "overpayment" could have possibly resulted from a statement regarding the 2006 workers' compensation payment. (A.R. at 213). Separately, there is no record evidence that the statement was untrue with respect to her second workers' compensation claim made in 2007. The Commissioner essentially concedes this point by basing her entire argument on conjecture:

> [*T*]*he Commissioner is unaware of the exact date on which Plaintiff applied* [the second time] *for Workers' Compensation benefits*, Plaintiff's application dated June 4, 2007, raises two possibilities. Either Plaintiff had not yet filed Workers' Compensation at the time of her application for disability, or she misrepresented the facts. *It is unlikely that Plaintiff's statement was true*, however, given that Plaintiff was awarded Workers' Compensation benefits, in the form of two-thirds of her former salary, commencing in July 2007, only one month later. Unless Plaintiff's case was filed and settled within one month, Plaintiff's application misstated the facts.

(ECF No. 14 at 9) (emphasis added). Without at least *some* evidence establishing the likelihood of receipt of workers' compensation benefits within the span of a month, this argument remains nothing more than guesswork.

The Commissioner also argues that Plaintiff is not without fault under 404.507(b), which permits a finding that a claimant was at fault where overpayment resulted from "[f]ailure to furnish information which [s]he knew or should have known to be material." (Comm'r Br. at 9). This argument is plainly belied by the record because, as the Commissioner acknowledges, Plaintiff disclosed that she was receiving workers' compensation at her disability determination hearing in December of 2008. (A.R. at 163).

Finally, the Commissioner contends that Plaintiff is at fault under 404.507(c) in that she received benefits to which she knew or should have known she was not entitled. (Comm'r Br. at 9-10). The Commissioner rests this argument on three premises: (i) that the original ALJ decision awarding her benefits warned that "the workers' compensation offset provisions at 20

CFR 404.408 may be applicable."; (ii) that Plaintiff's Binder & Binder counsel had presumptive knowledge of the relevant offset provisions that should be imputed Plaintiff, and (iii) that Plaintiff purportedly received a pamphlet giving notice of her "responsibilities" and that she could not receive both workers' compensation and disability benefits. (Comm'r Br. at 9-11). Each premise is flawed as explained below.

As to the first, the passing mention that "offset provisions at 20. CFR 404.408 may be applicable" is not enough, without further development, to establish that Plaintiff should have known she was not entitled to over $30,000 in checks subsequently issued to her. That undefined "offset provisions" may be "applicable" does not impart notice to a layperson that she may be receiving payments to which she has no right and will have to repay years later. As Judge Cogan explained in a similar scenario, "[w]hat may be obvious to us as lawyers and judges may not be so obvious to a disabled person." *Gadayeva v. Comm'r of Soc. Sec.*, No. 11-CV-2961 BMC, 2012 WL 6212701, at *4 (E.D.N.Y. Dec. 13, 2012). As to the second premise—that Plaintiff's 2008 counsel had knowledge of the offset requirement—there is no such evidence in the record, and the case the Commissioner cites for the proposition that "actions of counsel may be imputed to the client," *Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010), is inapposite. There, the court imputed affirmative "conduct" (a stipulation to restrict the record), not arcane knowledge of disability law.[5] *Id.* at 408; *see also Coulston v. Apfel*, 224 F.3d 897, 899 (8th Cir. 2000) (the "ALJ should have considered what [claimant] himself knew or should have known" rather than imputing his wife's knowledge to him.) As to the third premise, the

---

[5] The Court notes that imputing knowledge from the attorney in this scenario would ignore a potential conflict of interest: the attorney's fees were paid from the award he allegedly knew she was not entitled to receive. Plaintiff's 2009 Award Letter stated that "[w]e withheld $5,225.75 from your [$20,903] past-due benefits to pay the representative [of Binder & Binder]." (A.R. at 214). Although the record is not clear on the point, the administration nevertheless appears to seek recovery of all but $464 of that $20,903 from Plaintiff directly. The 2010 Overpayment Notice itemized overpayments which, by the Court's calculation, suggest that Plaintiff's past-due benefits were overpaid by $20,439. (*See* A.R. 66-69 (comparing actual payments and offsets by month and rate). Accordingly, it seems the administration will recover $4,763.75 from Plaintiff that it had previously awarded to her attorney ($5,225.75 less $464). As explained below, the ALJ should confirm these sums, explain any discrepancies, and expressly consider whether Plaintiff is obligated to repay fees the administration previously awarded to her counsel.

14

brochure that purportedly gave Plaintiff notice of her rights and obligations is nowhere in the record. Indeed, the Commissioner's brief cites not to the record but to the Social Security Administration's website for the substance of that pamphlet. No finding can be based on that source. *See Albalos v. Sullivan*, 907 F.2d 871, 874 (9th Cir.1990) ("[I]t is erroneous to rely on items not in the record."); *Perine v. Astrue*, 2009 WL 2045038, at *29 (N.D. W.Va. July 9, 2009) ("Information that is not part of the formal record ... is not evidence."); *Tornatore v. Barnhart*, 2006 WL 3714649, at *5 (S.D.N.Y. Dec. 12, 2006) (remanding matter because the court "cannot evaluate whether the ALJ's conclusion is supported by the substantial evidence if the evidence to which the ALJ refers is not in the record.")

Separately, the ALJ's opinion is also deficient in addressing the amount Plaintiff was overpaid. That is, it does not provide any "coherent explanation of how this overpayment occurred, or what [Plaintiff's] benefit levels were or should have been at any point," let alone "provide the court with an understandable background for its review of the ALJ's decision. Instead, the decision is replete with unexplained assumptions and unsupported conclusions about plaintiff's liability for the overpayment . . ." *Harzewski v. Chater*, 977 F. Supp. 217, 224 (W.D.N.Y. 1997). Such an explanation is sorely needed here, where the Commissioner appears to seek recovery of a lump sum payment for past-due benefits from a pro se claimant *after* distributing a portion of those benefits to the claimant's prior counsel. (*See* note 5, supra).

IV. CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is **DENIED** and the case **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The ALJ is instructed to (i) make clear findings in support of any fault determination; (ii) expressly determine which regulations govern and meaningfully apply them; (iii) address Plaintiff's mental state and understanding of her

obligations as required by the applicable regulations, and (iv) expressly explain his calculation of overpaid amounts, giving consideration to the fact that the Commissioner awarded to counsel at Binder & Binder a portion of the amount to be recouped, if that was the case. If necessary, the ALJ should consider summoning Plaintiff's former counsel, Gary Pernice at Binder & Binder, to help clarify the issue. The Clerk of Court is directed to enter judgment and close the case.

/s/ Sandra L. Townes
/SANDRA L. TOWNES
United States District Judge

Dated: September 26, 2016
Brooklyn, New York